SEMPLE (VOGLER v.). See Case No. 16,-987.

———

## Case No. 12,663.

### SENAB v. The JOSEPHINE.

[4 Cent. Law J. 262.] [1]

District Court, D. Louisiana. 1877.

MARITIME LIENS—RELEASE OF VESSEL ON BOND—REMEDY OF LIENHOLDER.

[A vessel discharged from arrest upon admiralty process by the giving of a bond or stipulation for her value, or for the payment of the amount claimed in the libel, returns to her owner freed from the lien upon which she was arrested, and in the absence of fraud can never be seized again for the same cause of action, even by the consent of the parties.]

[Cited in The William F. McRae, 23 Fed. 558.]

In admiralty.

BILLINGS, District Judge. Where a party libeled a ship which was subsequently released on bond under act of congress of March 3, 1847 [9 Stat. 181], the libelant must look exclusively to the bond of release for the satisfaction of his claim, and can not participate in the proceeds realized from the sale of the ship under a subsequent libel, except in cases of fraud. The bond becomes the substitute for the vessel. In The Union [Case No. 14,346], an order had been made in the district court, directing the re-delivery of the vessel which had been released upon bond and stipulation. Judge Blatchford said: "This order assumes that the discharge of the vessel from the seizure, and her delivery to her owners, was not absolute, but that she is still subject to the exertion of the power of the court for the purpose of satisfying any decree. No case has been furnished in which this power of the admiralty has been exerted; and, on principle, I do not well see how it can be maintained. The vessel, after being discharged from the arrest, upon the giving of the bond or stipulation, returns into the hands of her owner, subject to all previously existing liens or charges, the same as before the seizure, except as respects that on account of which the seizure was made. She is also subject to any sub-

sequently-accruing liens or charges in the hands of her owner, or in the hands of any person to whom she may have been transferred. The re-delivery, therefore, of the vessel, if permitted, or enforced, must necessarily be a re-delivery subject to all these existing or subsequently-accruing liens, and also to the rights of any bona fide purchasers, if a sale has in the meantime taken place. The complication and embarrassment growing out of the exercise of the power if sanctioned are apparent, and this doubtles accounts for the absence of any precedent in the books." The act of congress of March 3, 1847, provides: "It shall be the duty of the marshal to stay execution on such process, and to discharge the property arrested if the same has been levied, on receiving from the claimants a bond or stipulation." In The Wild Ranger, Brown & L. 84, the point before the court seems to have been determined by Dr. Lushington. In that case the Wild Ranger had collided with the Coleroon. Two suits were instituted against her, the one on behalf of the owners of the Coleroon, and the other on behalf of the owners of the cargo. In the first suit, that on behalf of the owners of the Coleroon, the ship was released on bail, the form of the stipulation being, "If he, the said defendant, shall not pay what may be adjudged against him in the said cause with costs, execution may issue forthwith against us, our heirs', executors' and administrators' goods and chattels, for a sum not exceeding ———." After the release the vessel was arrested at the suit of the owners of the cargo, and in that suit was sold, and the proceeds placed in the registry of the court. Both suits went to judgment. The libel on behalf of the owners of the vessel had been amended, and the decree was for £92 in excess of the damages claimed in the original libel and stipulated for in the release-bond. On the other hand, there was a surplus of £1,498 in the registry of the court, in the second suit, beyond the payment of the judgment in favor of the owners of the cargo. The application was to have this £92 paid out of the proceeds in the registry in the second suit. Dr. Lushington refused the application; the following are his reasons: "Now, the bail given for the ship in any action is the substitute for the ship; when the bail is given, the ship is immediately released from that cause of action and cannot be arrested again for that cause of action. Also, if the ship is sold in another action, the proceeds, save by the operation of some act of parliament, are liable only to the payment of liens. In this case then, after the bail was taken, the ship herself never could have been made liable for damage or interest." I am of opinion that the proceeds of a ship sold in another action are in legal consideration as the ship itself, and, therefore, can not be made available to answer this demand. It would seem that the act of congress authorizing the release of vessels on bond, providing for their re-

———

[1] [Reprinted by permission.]

lease, either before or after arrest, contemplates that the bail shall, in the absence of fraud, in all respects, be a substitute for the vessel. It would seem that the embarrassments and complications of the opposite rule would be very great. The authority of the cases cited sustains fully this reasoning. Upon the delivery to the claimant of the vessel, upon bail, the right of the libelant to rearrest the vessel, except in case of fraud, was lost; and since he can not resort to the vessel, he can not to her proceeds.